## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| JAMES P. RYAN,<br><br>         Plaintiff,<br><br>v.<br><br>JOHN HIGGINBOTHAM, LORETTA HIGGINS, CARLOS RYERSON, SAM SKIPPER, RONALD C. KAUFMAN, GLENN MASSEY, and AMERICAN SENIOR ASSOCIATION HOLDING GROUP, INC.,<br><br>         Defendants. | Civil Action No.: |

## <u>VERIFIED COMPLAINT</u>

Plaintiff, James P. Ryan ("Ryan"), by and through his undersigned counsel, brings this Complaint against Defendants, John Higginbotham ("Higginbotham"), Loretta Higgins ("Higgins"), Carlos Ryerson ("Ryerson"), Sam Skipper ("Skipper"), Ronald C. Kaufman ("Kaufman"), and Glenn Massey ("Massey") (collectively the "Massey Defendants"), and American Senior Association Holding Group, Inc. ("ASA"), alleging as follows:

## PRELIMINARY STATEMENT

1.     Ryan files this action seeking a temporary restraining order, a preliminary injunction, a permanent injunction, and declaratory relief to, *inter alia*, stop the Massey Defendants from their purported cou d'etat of ASA, the company over which Ryan presides as Chief Executive Officer.

2.     The Massey Defendants are and continue to interfere with Ryan's ability to fulfill his duties and obligations as the Chief Executive Officer of ASA and defame Ryan to achieve their unlawful purpose against him.  The Massey Defendants claim to have taken over control of ASA, but have done so in abrogation of established Georgia law, without proper company authority, and have literally locked Ryan out of the building.  The Massey Defendants have interfered with and refuse to abide by Georgia law and the Bylaws of ASA.

3.     Ryan also seeks compensatory and punitive damages for federal and state RICO violations, defamation, libel and slander, intentional interference with contractual relations, and for such other relief as deemed equitable and just by the Court.

## JURISDICTION

4.     The Court has personal and subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1961 et seq. and 28 U.S.C. § 2201, diversity

2

jurisdiction pursuant to 28 U.S.C. § 1367, and supplemental jurisdiction for the pendant state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

6.     Higginbotham is a citizen of Houston, Texas who may be served at his principal place of business located at 10301 Northwest Freeway #301, Houston, Texas 77092, or at Sam Skipper Companies, 5868 Westheimer, Suite 535, Houston, Texas 77057.

7.     Higgins is a citizen of Houston, Texas, who may be served at her principal place of business, 10301 Northwest Freeway #301, Houston, Texas 77092, or at Sam Skipper Companies, 5868 Westheimer, Suite 535, Houston, Texas 77057.

8.     Ryerson is a citizen of Houston, Texas, who may be served at his principal place of business, Ryerson & Associates, P.C., The Kirby Mansion, 2000 Smith Street, Houston, TX 77002.

9.      Skipper is a citizen of Houston, Texas, who may be served at his principal place of business, Sam Skipper Companies, 5868 Westheimer, Suite 535, Houston, Texas 77057.

10.     Massey is a citizen of Houston, Texas who may be served at his residence, 12869 Kingsbridge Lane, Houston, Texas 77077.

11.     ASA is a Georgia corporation with its principal place of business at 4555 Mansell Road, Suite 120, Alpharetta, Georgia 30022.

12.     ASA is a publicly traded company that is traded on the "OTC" stock exchange under the symbol "AMSA" and is considered a "penny stock" trading at approximately .02/share.

13.     During all relevant times alleged herein as it relates to Defendants, only Massey has been a shareholder of ASA.

14.     Upon information and belief, Skipper employs Higginbotham and Higgins as consultants, with Ryerson and Kaufman serving as Skipper's attorneys in various capacities.

## BACKGROUND

15.     On or about February 19, 2010, ASA was incorporated in Georgia by conversion of a Florida entity.

16.     A true and correct copy of the Articles of Conversion and Articles of Incorporation of ASA are attached as Exhibit "A".

17.     From February 2010 through August 6, 2014, ASA was operated as a Georgia corporation out of its principal place of business at 4555 Mansell Road, Suite 120, Alpharetta, Georgia 30022.

18.     On or about June 17, 2013, Ryan purchased 9 million shares of ASA stock from non-party Chris Polk.

19.     On or about June 17, 2013, Ryan became the Chief Executive Officer (CEO) of ASA, executing an "Executive Employment Agreement" to serve in such capacity for an initial two (2) year term, commencing June 17, 2013.

20.     Although Ryan replaced non-party Phil Kent, the prior "CEO" (in name and title of ASA), the actual de facto but unofficial "CEO" of ASA was non-party Chris Polk.

21.     Between June 17, 2013 and August 6, 2014, Ryan encountered significant difficulties as he realized key information relating to operation of the organization was missing, including membership lists, accounting information, tax and corporate documents, and an inoperable phone system.

22.     Ryan's initial duties as CEO dealt with limiting ASA's liability relating to a myriad of issues requiring immediate attention, including non-party

Chris Polk's "management" of ASA departing compensation package and related demands; defending an employment lawsuit brought by a former employee (prior to Ryan's tenure at ASA); settling outstanding tax issues with the IRS; and trying to obtain necessary and relevant information to assume operations of ASA.

23.    Despite the significant hurdles, under Ryan's direction, ASA was able to reduce its operating expenses from $800,000 in 2012 to $345,000 in 2013, and grow income from a $3,000 loss in 2012 to a net positive of $23,000 in 2013, and YTD 2014 income of $72,000.

24.    On or about June 28, 2014, the Massey Group calling themselves "Concerned Shareholders for the Preservation of American Seniors Association" sent a package of information to certain, but not all, shareholders of ASA (the "Solicitation").

25.    The Solicitation sent by the Massey Group sought "Shareholder Irrevocable Proxy and Consent for Action Without a Meeting" alleging that "Section 1.8 of the Company's Amended By-Laws, and Georgia Corporate Statute 14-2-704" allows them to "remove James Ryan as an officer of the Company and remove one director (Randy Nichols) and appoint three new ones (John Higginbotham, Loretta Higgins and Carlos Ryerson)."

26.     A true and correct copy of the Solicitation Package is attached as Exhibit "B".

27.     The alleged complaints set forth in the June 28, 2014 Solicitation Package allege "doldrums of inactivity" and seeks to remove the officers and directors of ASA based on the "Irrevocable Proxies" without a duly noticed meeting of the shareholders and without notice to all shareholders, both of which are required under Georgia law.

28.     On July 29, 2014, Massey requested a meeting with Ryan in Georgia to discuss the direction of ASA.

29.     On July 29, 2014, Massey and Ryan met at the Georgia law offices of Ballard Spahr, the law firm representing ASA.

30.     Massey stated that he had obtained irrevocable proxies representing 51% of the outstanding shares of ASA, and that he was "now in charge".

31.     At that July 29, 2014 and at no time since then has Massey, or anyone in the Massey Group, produced copies or originals of any purported irrevocable proxies executed by ASA shareholders.

32.     At the July 29, 2014 meeting between Massey and Ryan, counsel for ASA explained that the actions set forth in the irrevocable proxies violated, *inter alia*, O.C.G.A. § 14-2-704 because such actions by written consent of the

7

shareholders required the *unanimous* written consent of shareholders unless ASA's Articles of Incorporation allow for majority written consent, which the Articles of Incorporation do not so provide.

33.    ASA's Articles of Incorporation, attached hereto as Exhibit "A", do not allow for majority written consent, therefore the irrevocable proxies and the purported actions taken by the "new" board divesting Ryan of his right, title, and interest in his position as CEO of ASA, and his contractual rights under his Employment Agreement, violate Georgia law.

34.    Despite the clear statute prohibiting their actions and the many efforts to get the Massey Group to comply with Georgia law, the Massey Group have failed and refused to acknowledge that their actions were unlawful, and on August 5, 2014, presented fraudulent corporate resolutions and meeting minutes to change the registration information for ASA with the Secretary of State of Georgia so that the officer identified as "CEO" on such registration was changed from Ryan to Higginbotham; the "CFO" and "Secretary" was changed to Loretta Higgins, and the Registered Agent was changed to Ronald C. Kaufman, Esq., a Texas resident, fraudulently identified as having a registered office at 4555 Mansell Road, Suite 120, Alpharetta, Georgia 30022.

35.    On August 6, 2014, the Massey Group accessed the OTC Markets website and issued an ASA press release notifying the OTC Markets that the sole board member, Randy Nichols, and the sole officer, Ryan, had been removed, in favor of Higginbotham, Higgins, and Ryerson who had been appointed as the directors of ASA.

36.    A true and correct copy of the August 6, 2014 press release is attached as Exhibit "C".

37.    On August 7, 2014, using the fraudulent information provided on the Secretary of State's corporation database as authority, along with the fraudulent corporate resolutions, the Massey Group presented such documentation to PM Realty Group, the management and leasing company renting space to ASA at 4555 Mansell Road, Suite 120, Alpharetta, GA 30022 to change the locks on the office and locking out Ryan from entering his office, which included his personal computer, monitor, and other effects.

38.    True and correct copies of the fraudulent corporate documents, including corporate resolutions, minutes, and registrations for the "new" board (the "Trespassers") are attached as Exhibit "D".

39.    On August 7, 2014, when Ryan was prevented from accessing his office, he contacted the City of Alpharetta Police Department to come to the premises and remove the Trespassers from his office.

40.    On August 7, 2014, Higgins was in the ASA office and prevented Ryan from entering the premises.  She again utilized the fraudulent corporate documents as purported "authority" for her actions, and the police officer advised Ryan to contact attorneys as the police would consider it a civil matter.

41.    On August 7, 2014, fearing that the trespassing Massey Group were attempting to steal money from ASA, Ryan wrote a check for $6,000 to "American Seniors Association" to deposit in a new checking account to allow him to pay ASA's bills while the trespassers surreptitiously maintained his office.

42.    On August 7, 2014, Ryan was unable to open a new checking account for "American Seniors Association" at a new bank as the trespassers had changed the information on the Secretary of State's website appointing themselves officers and directors, and Ryan was prevented from utilizing such information to open an account.

43.    Ryan re-deposited the check in the original account.

44.    On August 7, 2014, the Massey Group issued another press release titled "Former CEO Jim Ryan pockets $6,000 from American Seniors Association Account", which publication was false.

45.    A true and correct copy of the August 7, 2014 Press Release is attached as Exhibit "E".

46.    On August 7, 2014, the Massey Group accessed the e-mail server for "americanseniors.org", and interfered with and prohibited Ryan from accessing his emails, which publication was false.

47.    On August 8, 2014, the Massey Group sent another press release through the OTC Markets website accusing Ryan of failing to make payments on behalf of ASA, which publication was false.

48.    A true and correct copy of the August 8, 2014 press release is attached as Exhibit "F".

49.    On August 12, 2014, Ryan, by and through counsel demanded that the defamation of Ryan cease and desist, and that a retraction be issued.

50.    On August 15, 2014, the Massey Group issued another press release, but failed to fully retract the statements demanded.

51.    A true and correct copy of the August 15, 2014 press release is attached as Exhibit "G".

52.    Despite demands for a legitimate shareholder meeting to allow the current Board of Directors, comprised of Randy Nichols, and the current CEO, Jim Ryan to present the facts relating to the Massey Group's attempted coup d'etat, the Massey Group has failed and refused to deliver control to Ryan and Nichols, and appears to be unlawfully operating ASA from Houston, Texas.

53.    On or about August 12, 2014, the Massey Group removed all of Ryan's belongings from his office, including his computer, monitor, and other personal effects, and moved them to Houston, Texas.

54.    Since August 7, 2014, Ryan has been locked out of his position as CEO of ASA, and has had no access to the information necessary to perform his job functions.

55.    Since August 7, 2014, Ryan has demanded the return of his computer and personal effects, but the return of such items has been rejected.

## COUNT I

## RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT (RICO)
## 18 U.S.C.S. § 1961 et seq.

56.    Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though fully set forth herein.

57.     Higginbotham and Higgins are consultants working for Sam Skipper, President, at Sam Skipper Companies.  Higgins is a licensed CPA in Texas, and Higginbotham is a managing consultant for Sam Skipper Companies, an oil and gas company.

58.     Higginbotham, Higgins, and Skipper utilize the legal skills of Ryerson and Kaufman in their oil and gas businesses.

59.     Together Higginbotham, Higgins, Skipper, Massey, Ryerson and Kaufman constitute an enterprise-in-fact within the meaning of 18 U.S.C. §1961(4), in that their ongoing organization operates to obtain control of organizations through a pattern of racketeering activity, including mail fraud, theft, computer fraud, and abuse.

60.     Massey and Skipper are at the top of the hierarchy in the enterprise, making all decisions regarding the organization.

61.     Through the enterprise, the Massey Group used mail fraud and use of interstate commerce to solicit illegal irrevocable proxies to purport to remove the legitimate director and officer of ASA, and thereafter appointed Higginbotham, Higgins, Ryerson, and Kaufman as the "interim management" of ASA.

62.     The enterprise was created to usurp control of a publicly traded entity.

13

63.     Higgins locked Ryan out of his office, refused to allow him to remove his personal belongings, took his personal computer, and other items constituting theft.

64.     The Massey Group unlawfully accessed the ASA server, website, email accounts, and blocked Ryan from accessing all websites and passwords.  The Massey Group changed information relating to ASA with OTC in public disclosures, and made substantial changes in the organization, including, without limitation, moving the entire company to Houston, Texas to consummate their racketeering activity.

65.     The Massey Group provided fraudulent corporate resolutions, board minutes, and fraudulent registrations with the Secretary of State of Georgia as "authority" to make such move and to further their unlawful actions.

66.     Ryan has been injured in his business and property as a result of the pattern of racketeering activity in violation of 18 U.S.C. §§1961(5), 1962(a).

67.     Ryan is entitled to injunctive relief, treble damages, and attorneys' fees pursuant to 18 U.S.C. § 1964.

## COUNT II

## COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. §1030(a)(c)(2))

68.   Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

69.   The Massey Group knowingly and/or with intent to defraud Ryan, accessed Ryan's personal computer system, and the ASA computer system without authorization and/or exceeded authorized access to obtain information from computers used in interstate commerce.

70.   The Massey Group intentionally accessed a protected computer without authorization, and as a result of such conduct caused damage and loss to Ryan.

71.   By reason of the above alleged acts and conduct, the Massey Group furthered their intended wrongdoing by improperly obtaining and utilizing information from Ryan and the ASA computer systems.

72.   The Massey Group's acts and conduct have impaired the integrity and availability of ASA and Ryan's data, programs, systems and/or information.

73.   By reason of the above alleged acts and conduct of the Massey Group, Ryan has been damaged, and it will suffer great and irreparable harm and damage

in excess of $5,000.00.  Ryan's damages will include diagnostic examination of its computer system to ascertain the full extent of comprised and impaired information, as well as losses for responding to the above alleged acts and conduct of the Massey Group, conducting a damage and lost revenue assessment, and other consequential damages incurred because of the impairment of Ryan's data, programs, systems and/or information. Ryan lacks an adequate remedy at law, and unless enjoined by this Court, the Massey Group will continue to cause irreparable injury and damage to Ryan as a result of the wrongful acts complained of herein.

74.     By reason of the Massey Group's acts and conduct, Ryan is suffering and will continue to suffer immediate and irreparable harm.

75.     Ryan is likely to succeed on the merits of its claims against the Massey Group. Ryan is without an adequate remedy at law for the injuries it continues to sustain resulting from the Massey Group's acts and conduct.

76.     Ryan demands that the Court enter judgment against the Massey Group:

a. Temporarily and permanently enjoining the Massey Group as set forth in 18 U.S.C. §1030(g) from using or disclosing information and/or data obtained from the Massey Group through unauthorized access to Ryan

and ASA's computer systems in violation of the Computer Fraud and Abuse Act;

b. Requiring the Massey Group to return all correspondence, files, membership information, plans, and other ASA and Ryan property to Ryan, including any information copied by Higgins during her time in the ASA office in Alpharetta, Georgia;

c. Awarding damages to Ryan as set forth in 18 U.S.C. §1030(g);

d. Awarding such other and further relief as the Court deems just and proper, including referring the matter to the appropriate U.S. Attorney's office for criminal prosecution.

## **COUNT III**

**COMPLAINT FOR INJUNCTIVE RELIEF INCLUDING TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**

77. Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

78. The Massey Group's actions and unlawful conduct is inflicting irreparable injury on Ryan who is unable to perform his job as CEO of ASA; and is further injured by the Massey Group's ongoing press releases in which they falsely

allege wrongdoing on the part of Ryan.

79.   Ryan is also employed in real estate investments and is unable to continue to raise funds for such ancillary investments with the allegations made by the Massey Group against him.

80.   Ryan is likely to succeed on the merits because uncontroverted evidence presented by Ryan and attached hereto shows that the Massey Group's actions violated and continue to violate Georgia law as they failed to act with authority in purporting to remove him from his position and interfering with his employment contract, slandering him in his business and trade.

81.   Ryan seeks a temporary restraining order and preliminary injunction placing him back in his position as CEO of ASA until such time as a lawful action is taken on behalf of the company.

82.   In the alternative, Ryan seeks an Order discharging him from his duties and responsibilities as CEO of ASA, and allowing him to proceed against the defendants individually for his damages.

83.   Ryan applies for a Temporary Restraining Order ("TRO") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, ordering the Massey Group and its CEO, Defendant, John Higginbotham, and all of the Massey Group's trespassing officers, agents, servants, employees, and attorneys to refrain from

18

unlawfully operating ASA from Houston, Texas, as such move was without authority, and violates criminal law.

84.    If this TRO is not granted, Ryan will be harmed and that harm will be permanent and irreparable.

85.    If this TRO is granted, the harm to the Massey Group and to operations of ASA would be virtually non-existent, because ASA could conduct a legitimate shareholder meeting and allegations that Ryan's performance was not sufficient would be addressed at a legitimate authorized shareholder meeting.

86.    The TRO should:

    a.    Immediately invalidate and set aside the fraudulent irrevocable proxies (to the extent that they exist which is unclear), corporate resolutions, board minutes, OTC disclosures, and other actions of the Massey Group who had no legitimate authority to take over ASA; and

    b.    Order Nichols to resume control of ASA from the Massey Group and move the company back to Georgia where it has a principal place of business;

    c.    Order the Massey Group to refrain from interfering with the business and operations of ASA; and

    d.    Order ASA to issue a press release fully retracting the improper, false, and defamatory statements made by the Massey Group when it unlawfully took over ASA.

87.    Until this matter can be heard through a trial, the harm to Ryan will be irreparable.

88.     If the accompanying motion for preliminary injunction is granted, the harm to the Massey Group, and to operations of ASA would be virtually non-existent, because ASA could conduct a legitimate shareholder meeting and allegations that Ryan's performance was not sufficient would be addressed at a legitimate authorized shareholder meeting, and because ASA will suffer no damages and incur no financial loss.

89.     The Court should not require that security be deposited by Ryan because there is no reason to believe that ASA will suffer any business or monetary loss as a result of a TRO, or a permanent injunction.

90.     Upon final decision of this matter, Ryan seeks permanent injunctive relief requiring that the Massey Group cease and desist from issuing defamatory statements against Ryan, and that it be prohibited from interfering in the business of ASA until such time as a shareholder meeting is held and individual members of the Massey Group enterprise are elected to positions within the organization.

## COUNT IV

### DECLARATORY JUDGMENT

91.     Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

20

92.     A justiciable controversy exists between Ryan and the Massey Group, as the Massey Group contends, *inter alia*, that it has complied with applicable law in obtaining irrevocable proxies of certain shareholders, which it has failed to disclose, and then conducting meetings and resolutions based on such improper and unlawful proxies to remove Ryan, Nichols, take over operations and move ASA to Houston, Texas within one (1) week of their purported coup d'etat.

93.     Ryan is entitled to declaratory judgment pursuant to 28 U.S.C. § 2201.

94.     Ryan asks the Court to enter declaratory judgment in his favor and against the Massey Group, as follows:

a.     Finding that the Massey Group's irrevocable proxies were procured through fraud, were not validly presented at a shareholder meeting, and the actions of the Massey Group in taking over ASA are unsupported by applicable law;

b      Finding that the Massey Group's actions in removing Ryan and interfering with his Employment Agreement with ASA was improper and unauthorized;

c.     Finding that Ryan is the legitimate CEO of ASA until such time as notice of a shareholder meeting is delivered and all shareholders are given an opportunity to cast votes;

d.     Finding that the Massey Group's unilateral move of ASA to Houston, Texas was improper, and without authority such that ASA should remain a Georgia corporation with a principal place of business in Georgia until such time as the shareholders elect to move it elsewhere; and

e.     Finding that the Massey Group violated Georgia law.

## COUNT V

## LIBEL PER SE (O.C.GA. §51-5-1, et seq.)

95.     Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

96.     The Press Releases dated August 6, 7, and 8, 2014 were published by the Massey Defendants with malice.

97.     The Press Releases led the public to believe, *inter alia*, that:  (a) Ryan had been properly terminated (with authority) from ASA when the Massey Group had no such authority to terminate Ryan or Nichols; (b) Ryan was "requested to leave the premises by police officers"; (c) Ryan stole $6,000.00 from ASA; (d) Ryan had threatened someone with "prosecution in Federal Court" if they return to the Company office in order to perform their daily tasks and duties; (e) Ryan had committed the company to a $3,400 per month lease on an executive suite; (f) Ryan had issued "Employees and insiders 5.1 million shares of Company stock"; (g) Ryan "mysteriously holds 9 million shares in a corporate name"; (h) Ryan obtained these shares at a 98.5% discount; (h) Ryan was somehow involved in an IRS delinquency and unpaid payroll taxes; (i) Ryan had received a monthly salary of over $33,000; (j) Ryan improperly reimbursed himself for company expenses;

(k) Ryan's "continuous detrimental actions exhibit a complete and utter disregard to the wellbeing of the Company and his fiduciary responsibility towards the shareholders". (Press Releases attached as Exhibits "D-F").

98.    The press releases related to and impugned the character of Ryan, including his reputation in his business, trade and profession, and unlawfully accused him of criminal acts.

99.    The press releases tend to bring Ryan into public hatred, contempt, or ridicule.

100.   The publication of the press releases by the Massey Group constitutes libel per se, and do not constitute privileged communications.

101.   As a direct and proximate result of the aforesaid libel, Ryan has suffered and continues to suffer special and general damages in an amount to be shown at trial.

## COUNT VI

## FALSE LIGHT

102.   Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

103.   The press releases issued by the Massey Group were published with

malice, negligence and/or gross negligence, and placed Ryan in a false light.

104.   The press releases falsely led those to whom it was published to believe that the press release had actually been issued by ASA due to Ryan's alleged failure to perform his employment duties.

105.   The press releases were actually issued by the Massey Group, specifically to impugn the reputation of Ryan, including his reputation in his business, trade and/or profession.

106.   The press releases are highly offensive to Ryan and would be to a reasonable person in the same or similar circumstances.

107.   The press releases tended to, and in fact did, bring Ryan into public hatred, contempt or ridicule.

108.   The publication of the press releases by the Massey Group to the general public constitutes the tort of false light.

109.   As a direct and proximate cause of the aforesaid false light, Plaintiff has suffered special and general damages in an amount to be established at trial, and Plaintiff is entitled to recover from the Massey Group for his damages.

110.   The independent tortious actions of the Massey Group show willful misconduct, malice, fraud, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to the consequences

such that the Massey Group is liable to Ryan for punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish, penalize and/or deter said Defendants.

## COUNT VII

## INTENTIONAL INTERFERENCE WITH CONTRACT

111.   Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

112.   On June 17, 2013, Ryan executed an Executive Employment Agreement with ASA for an initial two (2) year term.

113.   The Massey Group is not a party to the Executive Employment Agreement with ASA.

114.   Without privilege, the Massey Group interfered with Ryan's Executive Employment Agreement by engaging in a purported coup d'etat to unlawfully take over the ASA organization in a corrupt and improper "hostile takeover".

115.   In unlawfully taking over ASA, the Massey Group unilaterally terminated the Executive Employment Agreement, failed to comply with its terms, and reversed Ryan's August 7, 2014 direct deposit paycheck to remove those funds

from Ryan's checking account, despite Ryan working for ASA during the entire period that the paycheck was to be covered.

116.   Ryan continued to try to fulfill his contractual obligations despite the Massey Group's interference with his Executive Employment Agreement, by personally paying ASA's corporate obligations.

117.   The Massey Group's actions constitute an intentional interference with Ryan's contractual duties and obligations.

118.   As a direct and proximate cause of the aforesaid intentional interference with contractual relations, Plaintiff has suffered actual damages in an amount to be established at trial, and Plaintiff is entitled to recover from the Massey Group for such damages, including his reasonable attorney's fees.

119.   The independent tortious actions of the Massey Group show willful misconduct, malice, fraud, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to the consequences such that the Massey Group is liable to Ryan for punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish, penalize and/or deter said Defendants.

## COUNT VIII

## CONVERSION

120.   Ryan incorporates by reference the allegations set forth in the preceding paragraphs of the Verified Complaint as though set forth at length herein.

121.   On or about August 7, 2014, Higgins and the Massey Group converted to their own use Ryan's personal computer, monitor, and other personal effects which were in Ryan's office when Higgins locked him out and refused to allow him to enter.

122.   Ryan notified Higgins and the Massey Group that there were items in his office that belonged to him personally, but Higgins and the Massey Group refused to return the items belonging to Ryan.

123.   Demand has been made for the return of the items belonging to Ryan, but such demand has been refused.

124.   Higgins and the Massey Group have actual possession of the personal computer, monitor and other personal effects belonging to Ryan and have failed and refused to return such items to Ryan.

125.   Higgins and the Massey Group have converted Ryan's belongings to their own use in violation of Georgia law.

126.   Higgins and the Massey Group have damaged Ryan by converting his belongings and Ryan is entitled to recover the actual damages he has incurred through such conversion, including the full cost of the computer, monitor and personal effects, along with any additional damages Ryan may suffer due to Higgins and the Massey Group's unauthorized and improper use of the computer.

127.   Higgins and the Massey Group's unlawful conversion of Ryan's property and refusal to return same show willful misconduct, malice, fraud, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to the consequences such that the Massey Group is liable to Ryan for punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish, penalize and/or deter said Defendants.

## CONCLUSION

WHEREFORE, Ryan prays for the following:

a.   For a Temporary Restraining Order, as requested above and in the accompanying papers, setting aside and restraining (i) the fraudulent irrevocable proxies, corporate resolutions, board minutes, OTC disclosures, and other actions of the Massey Group who had no legitimate authority to take over ASA; (ii) preserving the status quo

28

and providing Ryan with the authority to resume control of ASA, while removing the Massey Group form purported control; (iii) restraining the Massey Group from further interference with the operations of ASA; (iv) requiring a press release from ASA fully retracting the improper, false, and defamatory statements made by the Massey Group when it unlawfully took over ASA; (v) enjoining the Massey Group from using or disclosing information and/or data obtained from Higgins of anyone else in the Massey Group through their unauthorized access to ASA's computer systems in violation of the Computer Fraud and Abuse Act; and (vi) requiring the Massey Group to return all correspondence, membership information, plans, and other Ryan or ASA property to Ryan, including any information copied or taken by Higgins from the ASA office in Alpharetta, Georgia;

b.   For a Preliminary Injunction, as requested above and in the accompanying papers, (i) the fraudulent irrevocable proxies, corporate resolutions, board minutes, OTC disclosures, and other actions of the Massey Group who had no legitimate authority to take over ASA; (ii) preserving the status quo and providing Ryan with the authority to

29

resume control of ASA, while removing the Massey Group form purported control; (iii)  restraining the Massey Group from further interference with the operations of ASA; (iv) requiring a press release from ASA fully retracting the improper, false, and defamatory statements made by the Massey Group when it unlawfully took over ASA; (v) enjoining the Massey Group from using or disclosing information and/or data obtained from Higgins of anyone else in the Massey Group through their unauthorized access to ASA's computer systems in violation of the Computer Fraud and Abuse Act; and (vi) requiring the Massey Group to return all correspondence, membership information, plans, and other Ryan or ASA property to Ryan, including any information copied or taken by Higgins from the ASA office in Alpharetta, Georgia

c.     For permanent injunctive relief requiring that the Massey Group be prohibited from further interference of Ryan's job as CEO of ASA and from purported control of ASA unless and until the valid exercise of the Board of ASA determines otherwise;

d.     For declaratory judgment that the various actions of the Massey Group violated Georgia law and that they do not and cannot control

ASA based on their actions to date.;

e.   For a judgment to be awarded against the Massey Group and in favor of Ryan for compensatory, treble, special, general, incidental, and punitive damages in an amount to be determined at trial;

f.   For attorneys' fees and *costs*; and

g.   For such other and further relief as the Court deems just and proper.


Dated:  August 29, 2014                    Respectfully submitted,


                                           */s/Cammi R. Jones*
                                           JOEL M. FERDINAND
                                           Georgia Bar No. 583127
                                           CAMMI R. JONES
                                           Georgia Bar No. 398999
                                           FisherBroyles, LLP
                                           1200 Abernathy Road
                                           Building 600, Suite 1700
                                           Atlanta, GA 30328
                                           Tel:   (404) 973-2180
                                           Fax:   (404) 334-3231
                                           jferdinand@fisherbroyles.com
                                           cjones@fisherbroyles.com
                                           *Attorneys for Plaintiff, James P. Ryan*


31

## **VERIFICATION**

The undersigned hereby verifies under penalty of perjury that the facts stated in the foregoing are true and correct.

_____
James P. Ryan

Dated: August 28, 2014

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1B</u>

The undersigned counsel of record certifies this document was prepared in the font and point selections approved by the court pursuant to LR5.1B.

Dated: August 29, 2014

*/s/Cammi R. Jones*
JOEL M. FERDINAND
Georgia Bar No. 583127
CAMMI R. JONES
Georgia Bar No. 398999
FisherBroyles, LLP
1200 Abernathy Road
Building 600, Suite 1700
Atlanta, GA 30328
Tel:   (404) 973-2180
Fax:   (404) 334-3231
jferdinand@fisherbroyles.com
cjones@fisherbroyles.com
*Attorneys for Plaintiff, James P. Ryan*